**FILED**

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

**February 2, 2015**

**Blaine F. Bates
Clerk**

<u>PUBLISH</u>

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE JAMES A. FUNDERBURGH, also known as Jim Funderburgh, also known as Jim's Maintenance, and JOYCE FUNDERBURGH,<br><br>Debtors. | BAP No.   WO-14-023 |
| SUSAN MANCHESTER, Trustee,<br><br>Plaintiff – Appellee,<br><br>v.<br><br>JAMES A. FUNDERBURGH and JOYCE FUNDERBURGH,<br><br>Defendants – Appellants,<br><br>and<br><br>DAVID R. BELL and ED MUNOZ,<br><br>Defendants. | Bankr. No.  07-10192<br>Adv. No.    07-01144<br>   Chapter   7<br><br>OPINION |
| IN RE JAMES A. FUNDERBURGH, also known as Jim Funderburgh, also known as Jim's Maintenance, and JOYCE FUNDERBURGH,<br><br>Debtors. | BAP No.   WO-14-024 |
| JAMES A. FUNDERBURGH and JOYCE FUNDERBURGH,<br><br>Appellants,<br><br>v.<br><br>SUSAN MANCHESTER, Trustee,<br><br>Appellee. | Bankr. No.  07-10192<br>   Chapter   7 |

Appeal from the United States Bankruptcy Court
for the Western District of Oklahoma

Submitted on the briefs:[*]

Philip A. Hurtt of Branch & Hurtt Law Firm P.C., Oklahoma City, Oklahoma, for Appellants.

Susan Manchester, pro se.

Before MICHAEL, ROMERO, and JACOBVITZ, Bankruptcy Judges.

MICHAEL, Bankruptcy Judge.

### *Rules make wonderful servants and terrible masters.*

In the American system of justice, a litigant is entitled to his or her day in court. This rather unremarkable phrase lies at the center of the appeal presently before us. Our debtors were found to have committed acts of fraud sufficient to prohibit the entry of a discharge. The order denying their discharge was entered after all parties were given a full and fair opportunity to litigate the relevant issues. On appeal, debtors do not dispute the factual underpinnings that support the decision to deny their discharge. Instead, they contend that a poor choice of words by the bankruptcy trustee prohibited litigation upon the merits of the trustee's claim, and that the bankruptcy court committed reversible error by granting the trustee relief from her misstep. Debtors also posit that a bankruptcy trustee does not have the right to distribute any of the estate's assets to creditors prior to the conclusion of the bankruptcy case. These positions are meritless.

---

[*] The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of these appeals. *See* Fed. R. Bankr. P. 8012, rescinded Nov. 30, 2014 (*now codified at* Fed. R. Bankr. P. 8019(b)(3), effective December 1, 2014). The cases are therefore ordered submitted without oral argument.

# I.    BACKGROUND[1]

James and Joyce Funderburgh ("Debtors") owned a cleaning business incorporated in the 1990's as Jim's Maintenance and Sons, Inc. ("Jim's Maintenance"), with each of them holding 50% of the stock.  In 2000, Debtors formed Jim's Commercial Cleaning LTD ("Jim's Commercial"), again with each owning 50% of the corporation's stock.  In 2001, Jim's Maintenance and/or Jim's Commercial entered into contracts with Target Corporation to provide cleaning services to 68 stores located in six states.[2]  The Target contracts were summarily terminated in May 2006, effectively putting Debtors' cleaning companies out of business.

Debtors and/or their corporations then became defendants in five different legal actions.  Former employees of the cleaning business filed two lawsuits in Texas federal district courts alleging violations of the Fair Labor Standards Act.  Creditor Arvest Bank instituted two lawsuits in Oklahoma district court for failure to make timely payments pursuant to a commercial credit card agreement and were granted judgment in both.[3]  Secured creditor JP Morgan Chase Bank filed a lawsuit in Oklahoma district court to recover payments due under four notes and to foreclose a mortgage.

Debtors sought Chapter 7 relief on February 27, 2007.  Susan Manchester was appointed as Chapter 7 trustee ("Trustee").  Debtors' schedules listed assets

---

[1]    Unless otherwise indicated, this factual description is taken from the bankruptcy court's *Order Avoiding Fraudulent Transfers Pursuant to 11 U.S.C. § 548 and Denying Debtors' Discharge Pursuant to § 727(a)(2)(A) and (a)(5) ("Order Denying Discharge"), in* (Amended) Appendix of Appellants filed in WO-14-023 ("Appellants' App.") at 84.

[2]    According to the bankruptcy court, "[a]lthough the Target contracts reflect the names of both Jim's Maintenance and Sons, Inc., and Jim's Commercial Cleaning LTD and Target used the names interchangeably, the company's official name at the time the parties executed the contracts was Jim's Commercial Cleaning LTD."  *Order Denying Discharge* at 3 n.4, *in* Appellants' App. at 86.

[3]    *Id.* at 4-5, *in* Appellants' App. at 87-88.

of approximately $114,000 and liabilities in excess of $2,000,000. Debtors claimed virtually all of their assets as exempt.

## A.    The Adversary Proceeding

On July 18, 2007, Trustee filed an adversary proceeding seeking to avoid and recover fraudulent transfers for the benefit of the estate and to deny Debtors a discharge ("Complaint"). Due to technological difficulties with electronic filing, Trustee's Complaint was erroneously filed twice, and therefore docketed as two separate adversary proceedings numbered #07-1143 and #07-1144. Summons were issued in proceeding #07-1144.[4] The following day, the duplicate filing was brought to the Trustee's attention by the clerk of the bankruptcy court. In response, the Trustee's office attempted to remedy the situation by filing a dismissal of proceeding #07-1143 ("Dismissal"), which stated in its entirety, "COMES NOW Susan Manchester, Trustee, and hereby dismisses the above styled Adversary Proceeding *with prejudice since it was filed in duplicate*."[5]

On August 17, 2007, Debtors filed a motion to quash service in proceeding #07-1144 and dismiss Trustee's Complaint ("Motion to Dismiss"). Relying on principles of res judicata, collateral estoppel, and retraxit, Debtors argued Trustee's Dismissal of proceeding #07-1143 terminated the bankruptcy court's jurisdiction and precluded Trustee from pursuing the same claims against the same parties in proceeding #07-1144.[6] None of the other defendants (the recipients of the allegedly fraudulent transfers) joined in the Motion to Dismiss. The Trustee responded by asking the bankruptcy court to set aside the Dismissal

---

[4]    *Complaint to Avoid Fraudulent Transfers and for Turnover of Property of the Estate and Complaint to Deny the Debtors' Discharge ("Complaint")*, *in* Appellants' App. at 48.

[5]    *Dismissal with Prejudice*, *in* Appellants' App. at 15 (emphasis added).

[6]    *Special Appearance [Motion to Quash Service and Dismiss Complaint]*, *in* Appellants' App. at 59.

on equitable grounds ("Motion to Set Aside Dismissal").[7] On November 27, 2007, the bankruptcy court entered an order granting Trustee's Motion to Set Aside Dismissal ("Order Setting Aside Dismissal").[8]

In the Order Setting Aside Dismissal, the bankruptcy court described the circumstances that led to the filing of the Dismissal:

> According to Trustee, on July 18, 2007, her assistant was in the process of electronically filing an adversary complaint against [Debtors] when the CM/ECF website quit responding. Trustee's assistant "had no idea the . . . Adversary Complaint had been filed because the website did not respond." She closed the website then logged in again and started the filing procedure anew, with the same adversary complaint. The next day, Deputy Court Clerk Penny Wallis contacted Trustee's assistant, informing her that duplicate adversary proceedings had been electronically filed. The case numbers for these proceedings were 07-1143 and 07-1144. That same day, Trustee's assistant electronically filed a Dismissal With Prejudice in case number 07-1143, "since it was filed in duplicate."[9]

The bankruptcy court found it "abundantly clear from the pleadings, affidavits, and circumstances, that what is involved here is simply a computer glitch, compounded, perhaps, by operator panic."[10] The bankruptcy court concluded that "it would be wholly inequitable to require Trustee to be bound by her Dismissal With Prejudice, when it is patently obvious that the sole intent was to correct a duplicate filing."[11] The bankruptcy court denied the Motion to Dismiss, allowing the adversary proceeding to proceed to trial. Debtors then filed a motion to reconsider, which the bankruptcy court rejected, noting that "denying Trustee the right to pursue her several causes of action would be manifestly unjust and

---

[7] *Trustee's Response to Motion to Dismiss and Motion to Set Aside Dismissal on Equitable Grounds ("Motion to Set Aside Dismissal")*, *in* Appellee's App. at 1.

[8] *Order Granting Trustee's Motion to Set Aside Dismissal ("Order Setting Aside Dismissal")*, *in* Appellants' App. at 67.

[9] *Id.* at 2, *in* Appellants' App. at 68 (citations omitted).

[10] *Id.* at 3, *in* Appellants' App. at 69.

[11] *Id.* at 4, in Appellants' App. at 70.

conflict with the purpose of the Bankruptcy Code."[12]  Debtors attempted to appeal the bankruptcy court's Order Setting Aside Dismissal to this Court, but the appeal was dismissed as interlocutory.[13]

Trial of the adversary proceeding was held in November 2010.  Trustee sought to avoid the following transfers made by Debtors and/or their corporations as fraudulent and to recover the property for the benefit of the estate:  1) a 2001 Chevrolet Corvette to their son Bryan Funderburgh; 2) two 2006 Toyota trucks to employees of the cleaning business; 3) corporate assets including cleaning contracts, accounts receivable, equipment, and supplies to a new corporate entity, JMSI, LLC, created in August 2006 and owned by Bryan Funderburgh; 4) five acres of real property located in Choctaw, Oklahoma to Bryan Funderburgh; 5) five acres of real property located in Oklahoma County, Oklahoma to Bryan Funderburgh; and 6) a Pearson cruiser houseboat located in Key West, Florida to their son James Funderburgh.

Trustee also asked the bankruptcy court to deny Debtors a discharge pursuant to 11 U.S.C. § 727(a)(2)(A) and (a)(5),[14] alleging they transferred or concealed assets with the intent to hinder, delay, or defraud creditors.  Among the assets not disclosed were:  1) a Rolex watch; 2) an ownership in Funderburgh Horton LLC which paid dividends of $27,435 after the Chapter 7 petition was filed that were not turned over to Trustee; 3) season tickets to the University of Oklahoma football games; 4) valuable University of Oklahoma football memorabilia; 5) office furniture; and 6) jewelry.

---

[12]  *Order Denying Defendant's Motion to Reconsider* at 6, *in* Appellants' App. at 77.

[13]  *See Notice of Appeal* filed September 18, 2009, *in* Appellants' App. at 79; *Order Dismissing Appeal as Interlocutory*, BAP No. WO-09-054 (Oct. 29, 2009), *in* Appellants' App. at 81.

[14]  Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

During the trial, Trustee reached a settlement with Debtors' son, Bryan Funderburgh, who turned over all of the stock and assets in JMSI, LLC, as well as the part of the Oklahoma County real property that had not been previously sold.[15] Additionally, the 2001 Corvette was sold and the proceeds therefrom were used by Debtors to partially fund a settlement that resolved objections by Trustee and creditors to Debtors' exemption of their houseboat as homestead.[16]

The bankruptcy court entered its order and judgment in the adversary proceeding on May 28, 2014, denying Debtors a discharge ("Order Denying Discharge"). The bankruptcy court found Debtors were insolvent as of May 25, 2006, and had litigation pending against them when the property transfers in question were made. The bankruptcy court concluded the transfers of the Corvette and the Oklahoma County real property to Bryan Funderburgh were fraudulent and avoided them. The bankruptcy court further concluded that Debtors' transfers of property and concealment of assets warranted denying them a discharge pursuant to § 727(a)(2)(A) and (a)(5).[17]

### B.     The Interim Distribution

On March 17, 2014, while the bankruptcy court's decision in the adversary proceeding was under advisement, Trustee filed a motion for authority to make an interim distribution to creditors ("Motion to Distribute").[18] In the Motion to Distribute, the Trustee stated that the majority of the estate's assets had been collected and reduced to cash, and that she was holding approximately $139,000.

---

[15]     *Order Denying Discharge* at 15, *in* Appellants' App. at 98.

[16]     *Id.* at 10, *in* Appellants' App. at 93.

[17]     *Id.* at 39-40, *in* Appellants' App. at 122-23.

[18]     *Trustee's Motion for Authority to Make Interim Distribution to Creditors Combined with Brief in Support and Notice for Opportunity for Hearing ("Motion to Distribute")*, *in* (Second Amended) Appendix of Appellants filed in WO-14-024 ("Appellants' 14-024 App.") at 41.

-7-

She also advised the bankruptcy court that the deadline for filing claims had passed, that all filed claims had been examined, and all objections to claims had been resolved. The Trustee proposed an interim distribution to creditors of $41,766.

Debtors objected to the proposed interim distribution, arguing "[u]ntil the [bankruptcy court] renders a decision in the pending Adversary, case no., 07-1144 [sic], '[i]nterim' distribution may affect the Debtors' ability to recover funds if those funds have already been distributed to their creditors."[19] Debtors also alleged that Trustee provided no valid reason for making interim distributions.[20] Trustee responded that Debtors did not have standing to challenge her Motion to Distribute, and also that making interim distributions, after establishing an appropriate reserve, would be proper in this seven-year-old Chapter 7 bankruptcy case.[21] The bankruptcy court heard the matter on May 29, 2014,[22] sought input from the United States Trustee's Office, and on June 4, 2014, entered an order authorizing Trustee to make interim distributions ("Order Authorizing Distribution").[23]

Debtors timely filed notices appealing both of the bankruptcy court's orders on June 9, 2014.[24] This Court issued an order to show cause ("Show Cause

---

[19] *Debtors' Objection to Trustee's Motion to Distribute* at 1, *in* Appellants' 14-024 App. at 44.

[20] *Id.*

[21] *Trustee's Response to Debtors' Objection to Trustee's Motion to Distribute* at 1-2, *in* Appellee's 14-024 App. at 34-35.

[22] *Docket No. 276 of Bankruptcy Docket Sheet*, *in* Appellants' 14-024 App. at 38.

[23] *Order Authorizing Distribution*, *in* Appellants' 14-024 App. at 47.

[24] Debtors also filed a motion to stay the Order Authorizing Distribution pending appeal, and Trustee objected. *See Docket Nos. 283 and 285 of Bankruptcy Docket Sheet*, *in* Appellants' 14-024 App. at 39-40. The bankruptcy

(continued...)

Order") why Debtors' appeal of the Order Authorizing Distribution should not be dismissed for lack of standing. After the parties filed responses to the Show Cause Order, a motions panel referred the issue of standing to this merits panel by order dated July 16, 2014.[25]

## II.  APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[26] Neither party elected to have this appeal heard by the United States District Court for the Western District of Oklahoma. The parties have therefore consented to appellate review by this Court.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[27] Here, the bankruptcy court's Order Denying Discharge terminated the adversary proceeding, and therefore is final for purposes of review. Although the bankruptcy court's Order Authorizing Distribution permits Trustee to make "interim" distributions, we conclude it is final for purposes of appeal.[28] In the

---

[24]     (...continued)
court denied the motion by order dated October 6, 2014. *See Docket No. 288 of Bankruptcy Docket Sheet in* No. 07-10192.

[25]     *Docket No. 24* in BAP Appeal No. WO-14-024.

[26]     28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002, revised Nov. 30, 3014 (*now also at* Fed. R. Bankr. P. 8005, effective Dec. 1, 2014); 10th Cir. BAP L.R. 8001-3, rescinded Nov. 30, 2014 (*now codified at* 10th Cir. BAP L.R. 8005-1, effective December 1, 2014).

[27]     *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[28]     When dealing with appeals arising out of bankruptcy cases, courts routinely apply a flexible standard in determining finality. *See, e.g., In re Bullard*, 752 F.3d 483, 485-86 (1st Cir.), *cert. granted*, 135 S.Ct. 781 (2014) (bankruptcy cases typically involve numerous controversies bearing only a slight relationship to

(continued...)

-9-

alternative, the Order Authorizing Distribution is appealable under the collateral order doctrine.[29]  Once money has been transferred from the bankruptcy estate, recovery of those funds is expensive and complicated at best and impossible at worst.

## III.   ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Debtors do not challenge the bankruptcy court's findings that they fraudulently transferred property and concealed assets.  Instead, Debtors contest the bankruptcy court's Order Setting Aside Dismissal.  Debtors assert the bankruptcy court erred in exercising jurisdiction over Trustee's adversary proceeding after Trustee voluntarily dismissed the duplicate adversary proceeding.  Debtors also contend the bankruptcy court erroneously considered pre-petition acts taken in their capacities as corporate owners of the cleaning businesses in determining they should be denied a discharge.  With respect to the Order Authorizing Distribution, Debtors assert the bankruptcy court erred because "there is no provision in the bankruptcy code that allows for an interim distribution."[30]

For purposes of standard of review, decisions by trial courts are traditionally divided into three categories, denominated:  1) questions of law, which are reviewable *de novo*; 2) questions of fact, which are reviewable for clear

---

[28]     (...continued)
each other so an order may be final even if it does not resolve all issues in the case so long as it disposes of all issues pertaining to a discrete dispute).

[29]     *See Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 768 (10th Cir. BAP 1997) (order is final under collateral order doctrine if it (1) conclusively determines a disputed question completely separate from the merits of the action, (2) is effectively unreviewable on appeal from a final judgment, and (3) is too important to be denied review).

[30]     Appellant's Opening Brief in WO-14-024 at 4.

error; and, 3) matters of discretion, which are reviewable for abuse of discretion.[31] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[32] A factual finding is "clearly erroneous" when "'it is without factual support in the record, or if the appellate court, after reviewing all the evidence, is left with the definite and firm conviction that a mistake has been made.'"[33] "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[34]

We review the bankruptcy court's Order Setting Aside Dismissal, which is in the nature of postjudgment relief, for an abuse of discretion.[35] We note that "[a]n abuse of discretion occurs when the [trial] court bases its ruling on an erroneous conclusion of law or relies on clearly erroneous fact findings."[36] Because Debtors do not challenge any of the bankruptcy court's factual findings, we review its application of law to the facts in the Order Denying Discharge *de*

---

[31] *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

[32] *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

[33] *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (quoting *LeMaire ex rel. LeMaire v. United States*, 826 F. 2d 949, 953 (10th Cir. 1987)).

[34] *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

[35] *Jennings v. Rivers*, 394 F.3d 850, 854 (10th Cir. 2005) (appellate court reviews trial court's decision on postjudgment motions for abuse of discretion); *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001) (courts have discretion to set aside voluntary dismissal with prejudice if it was not a "free, calculated, and deliberate" choice).

[36] *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (quoting *Kiowa Indian Tribe of Okla. v. Hoover,* 150 F.3d 1163, 1165 (10th Cir. 1998)).

*novo*.[37]  If Debtors have standing to challenge the bankruptcy court's Order Authorizing Distribution, we review such order for an abuse of discretion.[38]

## IV.    ANALYSIS

### A.    *Order Setting Aside Dismissal*

On appeal, Debtors argue "it is uncontroverted that the Chapter 7 Trustee filed a 'voluntary dismissal with prejudice' in which there are clearly identical parties and identical issues.  The voluntary dismissal with prejudice is a death knell to the Chapter 7 Trustee's action."[39]  According to Debtors, the Dismissal of proceeding #07-1143 operates as res judicata and prevents Trustee from taking further action in proceeding #07-1144.[40]  We disagree.  The bankruptcy court properly refused to attribute res judicata effect to the Dismissal.  Therefore, entry of the Order Setting Aside Dismissal was not an abuse of discretion.

In this case, after Trustee filed her Dismissal, Debtors filed their Motion to Dismiss Trustee's remaining Complaint on res judicata grounds.  Trustee responded with her Motion to Set Aside Dismissal on equitable grounds, and the bankruptcy court entered its Order Setting Aside Dismissal.  The bankruptcy court relied on its equitable powers pursuant to § 105 of the Bankruptcy Code to set aside the Dismissal.[41]  However, Trustee's Motion to Set Aside Dismissal is in the

---

[37]    *In re Graves*, 609 F.3d 1153, 1156 (10th Cir. 2010).

[38]    *See Braunstein v. McCabe*, 571 F.3d 108, 120 (1st Cir. 2009) (Congress gave bankruptcy courts broad discretion in passing on a wide range of problems relating to administration of bankruptcy estates); *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 340 (3d Cir. 2006) (bankruptcy courts have broad authority in preventing injustice or unfairness in administration of bankruptcy estates).

[39]    Appellants' Opening Brief in WO-14-023 at 4.

[40]    *Id.* at 5.

[41]    The bankruptcy court did not specifically reference § 105 in its Order Setting Aside Dismissal but did so when it denied Debtor's motion to reconsider. *See Order Denying Defendants' Motion to Reconsider* at 5-6*, in* Appellants' App. at 76-77.

nature of a Rule 60 motion for relief from a judgment or order because such relief also has equitable underpinnings,[42] and we will treat it as such. Even though a bankruptcy court has discretion to grant Rule 60 relief as justice requires, "such relief is extraordinary and may only be granted in exceptional circumstances."[43] We conclude the bankruptcy court did not abuse its discretion when it granted relief from judgment and entered the Order Setting Aside Dismissal.

The doctrine of res judicata serves both private and public interests by requiring disputes between parties and their privies to be resolved within the context of a single litigation.[44] The United States Supreme Court has observed that res judicata "has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation."[45] In general, the rules of res judicata apply only to adjudications that are final or on the merits.[46] "A dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata and is effective not only on the immediate parties to the action but also on their privies."[47] The United States Court of Appeals for the

---

[42] *See Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005) (Rule 60(b)(6) provides courts with authority to vacate judgments whenever such action is appropriate to accomplish justice); *White v. Nat'l Football League*, 756 F.3d 585, 596 (8th Cir. 2014) ("[Rule 60] is designed to prevent injustice by allowing a court to set aside the unjust results of litigation."); *In re Kirwan*, 164 F.3d 1175, 1177 (8th Cir. 1999) ("This rule may be liberally construed to do substantial justice to allow parties to air meritorious claims in the absence of fault or prejudice.").

[43] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1009 (10th Cir. 2000) (internal quotation marks omitted).

[44] *See* 18 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 4403 (2d ed.).

[45] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979).

[46] 18 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Juris.* § 4402 (2d ed.).

[47] 9 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.*, § 2367

(continued...)

Tenth Circuit ("Tenth Circuit") has held that "[a] voluntary dismissal with prejudice operates as a final adjudication on the merits . . . and thus is a final judgment."[48] Thus, at first blush, Trustee's Dismissal may potentially have res judicata effect. However, the Tenth Circuit has also held that "like other final judgments, a dismissal with prejudice under Rule 41(a)(1)(A)(i) can be set aside or modified,"[49] ordinarily by way of a Rule 60 motion on the basis of mistake.[50] Once set aside, it is no longer a final judgment capable of having res judicata effect.[51]

Debtors moved to dismiss Trustee's surviving Complaint, arguing it was prevented by rules of prior adjudication. The United States Supreme Court has indicated that "[f]or the sake of repose, res judicata shields the fraud and the cheat as well as the honest person. It therefore is to be invoked only after careful inquiry."[52] But it has also cautioned that

> The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res*

---

[47]    (...continued)
(3d ed.).

[48]    *Schmier v. McDonald's LLC*, 569 F.3d 1240, 1242 (10th Cir. 2009) (quoting *Warfield v. AlliedSignal TBS Holdings, Inc.*, 267 F.3d 538, 542 (6th Cir. 2001) and *Randall v. Merrill Lynch*, 820 F.2d 1317, 1320 (D.C. Cir. 1987)).

[49]    *Schmier*, 569 F.3d at 1242. *See also White v. Nat'l Football League*, 756 F.3d 585, 595 (8th Cir. 2014)*; Nelson v. Napolitano*, 657 F.3d 586, 588 (7th Cir. 2011); *Smith v. Phillips*, 881 F.2d 902, 904 (10th Cir. 1989). For a rare exception to this rule, *see Netwig v. Ga.-Pac. Corp.*, 375 F.3d 1009 (10th Cir. 2004).

[50]    *See, e.g.*, *Warfield*, 267 F.3d at 542 (courts have discretion to set aside voluntary dismissal with prejudice if it was not a "free, calculated, and deliberate" choice) (internal quotation marks omitted).

[51]    *See* comment f to Restatement (2d) of Judgments § 13 (a pending motion to set aside a judgment does not render the judgment nonfinal, but the judgment ceases to be final if it is in fact set aside by the trial court, as it would be upon the granting of a motion for a new trial).

[52]    *Brown v. Felsen*, 442 U.S. 127, 132 (1979).

*judicata*.". . . . We have stressed that "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts[.]"[53]

Still, several courts of appeal have concluded that rare exceptions continue to exist,[54] and further that "[t]he doctrine of res judicata rests upon the bedrock principle that, for claim preclusion to apply, a litigant first must have had a full and fair opportunity to litigate his claim."[55] Apropos of the facts here, one New York court counseled that we must "remain mindful that if applied too rigidly, res judicata has the potential to work considerable injustice. In properly seeking to deny a litigant 'two days in court,' courts must be careful not to deprive him of one."[56]

Here, the duplicate filing of the adversary proceeding is not the type of "second action" res judicata rules seek to prevent. The "two proceedings" were the result of technological difficulties, or as described by the bankruptcy court, "a computer glitch, compounded, perhaps, by operator panic."[57] Setting aside the Dismissal so that Trustee's Complaint could proceed did not lead to piecemeal litigation because Trustee had not had a full and fair opportunity to litigate her

---

[53] *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 401 (1981) (citations omitted).

[54] *See Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 819 (6th Cir. 2010) ("We have recognized an exception to preclusion principles when an inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party.") (internal quotation marks omitted); *Porn v. Nat'l Grange Mut. Ins. Co.*, 93 F.3d 31, 37 (1st Cir. 1996) ("this court has suggested that an occasional exception to claim preclusion may still exist in instances of unusual hardship") (internal quotation marks omitted). *See also* Restatement (2d) of Judgments § 26(1)(f) and comment i.

[55] *Gonzalez v. Banco Cent. Corp.*, 27 F.3d 751, 758 (1st Cir. 1994).

[56] *Landau v. LaRossa, Mitchell & Ross*, 892 N.E.2d 380, 383 (N.Y. 2008) (internal quotation marks omitted).

[57] *Order Setting Aside Dismissal* at 3, *in* Appellants' App. at 69.

claim. Neither have Debtors been harmed or prejudiced in any way by relying on the Dismissal to their detriment. The words "dismissed with prejudice" were modified by the explanation "since it was filed in duplicate." It was patently clear from the Dismissal that Trustee never intended to terminate or abandon her § 727 claim against Debtors, especially since an identical Complaint remained pending. Applying the principle of res judicata on the facts of this case would unfairly deprive Trustee of even one day in court.

Debtors should not be able to twist the principles of res judicata to contrive a procedural impediment to Trustee's claim based on a technological error compounded by an ill-fated attempt to correct that error. Use of the words "since it was filed in duplicate" in reference to a newly filed case in which claims will be pursued is evidence that the intent of the notice was to dismiss the duplicate filing without prejudice. Because there was no deliberate act to dismiss the case with prejudice, we conclude Trustee's office made a mistake or inadvertent statement, which for the sake of equity, may be remedied by post-judgment relief under Rule 60.[58] That was the effect of the bankruptcy court's Order Setting Aside Dismissal.

The bankruptcy court's decision is founded in equity and common sense. After being given a full and fair opportunity to litigate their claims, Debtors were found to have committed fraud. They fraudulently transferred property. As a

---

[58] There are several categories of Rule 60 relief that are potentially applicable here. First, Rule 60(a) permits the court to grant relief from clerical mistakes, oversights, or omissions. Further, on motion and just terms Rule 60(b)(1) permits relief based on mistake, inadvertence, surprise, or excusable neglect, and Rule 60(b)(6) allows relief for "any other reason justifying relief." The mistake with legal consequences here is the voluntary dismissal with prejudice. But Trustee never intended to terminate or suspend her adversary against Debtors, only to remedy the earlier "clerical" type mistake resulting in duplicate filings. That mistake was patently clear on the face of the Dismissal because the words "with prejudice" were modified by the phrase "since it was filed in duplicate." Relief from the Dismissal under Rule 60(a) therefore seems the best fit, but the result here would be the same regardless of which category of Rule 60 we view the bankruptcy court's relief as based on.

result of their misconduct, the bankruptcy court found Debtors ineligible to receive the benefits of a bankruptcy discharge. As discussed *infra* the record amply supports the decision of the bankruptcy court to deny Debtors a discharge. Were this Court to grant Debtors the relief they seek, they would be relieved of the consequences of their actions. These are not "honest but unfortunate" debtors. They are not entitled to a discharge on the basis of two poorly chosen words in a pleading that clearly evinces the intent of the Trustee to continue to pursue claims for the benefit of this bankruptcy estate and the bankruptcy system as a whole. The bankruptcy court's Order Setting Aside Dismissal was in the nature of granting Rule 60 relief to give the ambiguous statement "with prejudice since it was filed in duplicate" its obviously intended meaning. The bankruptcy court did not abuse its discretion in setting aside the Dismissal.

### B.     *Order Denying Discharge*

With respect to the Order Denying Discharge, Debtors argue that

> "[i]n deciding whether to grant Debtors a discharge, the bankruptcy court inappropriately considered [ ] fraudulent transfers that were made by the Debtors acting in their corporate officer position. In other words, it would appear that the court pierced the corporate veil even though the chapter 7 Trustee put on no evidence whatsoever that the corporations were the alter egos of the [Debtors]."[59]

Debtors misinterpret the bankruptcy court's opinion. The Order Denying Discharge is based on Debtors' fraudulent transfers of personal property and concealment of assets, not their transfers of corporate property. The bankruptcy court explicitly stated it was considering Debtors' corporate transfers "solely for the purpose of establishing Debtors' *course of conduct* for consideration in the § 727 analysis."[60] Drawing inferences from a course of conduct to establish

---

[59]     Debtors' Opening Brief in WO-14-023 at 9-10.

[60]     *Order Denying Discharge* at 34, *in* Appellants' App. at 117 (emphasis added).

fraudulent intent is permissible because a debtor rarely reveals his subjective intent.[61]

Even if we assume the bankruptcy court erroneously considered transfers made by Debtors in their capacity as corporate officers, any such error is harmless. Debtors do not challenge the bankruptcy court's findings that they fraudulently transferred property in their individual capacities, i.e., the Corvette and the Oklahoma County real property conveyed to their son Bryan Funderburgh. Nor do they challenge the bankruptcy court's finding that they concealed personal assets. As a result, it is irrelevant whether the bankruptcy court considered Debtors' transfers of corporate property for purposes of denying them a discharge. Ignoring the corporate transfers in question, there remains more than enough evidence to support the bankruptcy court's conclusion that Debtors were not entitled to a discharge. Therefore, the Order Denying Discharge is affirmed.

## C. Order Authorizing Distribution

Debtors appealed the bankruptcy court's Order Authorizing Distribution and this Court entered its Show Cause Order seeking an explanation for why the appeal should not be dismissed for lack of standing. We are required to address the issue of standing even if the court below did not pass on it, and even if no party has raised the issue.[62] Parties seeking the exercise of jurisdiction in their favor must "clearly [ ] allege facts demonstrating that [they are] proper part[ies] to invoke judicial resolution of the dispute."[63] Debtors have not, and moreover, cannot meet this burden.

In their response to the Show Cause Order, Debtors rely on the definition

---

[61] *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008).

[62] *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 230-31 (1990), *modified on other grounds by City of Littleton v. Z.J. Gifts D-4, LLC*, 541 U.S. 774, 781 (2004).

[63] *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

of standing from Black's Law Dictionary that "standing to sue" means "a party has sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy."[64] But standing for bankruptcy appeal purposes is narrower than Article III standing– it requires an aggrieved person to have a pecuniary interest.[65] This narrower test further limits standing to avoid "'endless appeals brought by a myriad of parties who are indirectly affected by every bankruptcy court order.'"[66] If a court's order diminishes a person's property, increases his burdens, or impairs his rights, then such person is aggrieved.[67] A Chapter 7 debtor rarely meets this requirement with respect to asset distribution because the manner in which a trustee disburses an estate's assets does not pecuniarily affect him.[68] However, sometimes a debtor may demonstrate a pecuniary interest, and therefore standing, if there is a possibility of an estate surplus after satisfying all debts.[69]

On appeal, Debtors have not alleged the possibility of an estate surplus, but according to Trustee, there will be no surplus as claims filed exceeded $1.3 million while assets held by Trustee were approximately $140,000.[70] There is no chance any of the money held by the Trustee will ever trickle down to Debtors.

---

[64] *Appellants' Response to Order to Show Cause* at 2, *Docket No. 16*, in BAP Appeal WO-14-024.

[65] *Atkinson v. Ernie Haire Ford, Inc. (In re Ernie Haire Ford, Inc.)*, 764 F.3d 1321, 1335-36 (11th Cir. 2014); *In re Cult Awareness Network, Inc.*, 151 F.3d 605, 607 (7th Cir. 1998).

[66] *In re Am. Ready Mix, Inc.*, 14 F.3d 1497, 1500 (10th Cir. 1994) (quoting *Holmes v. Silver Wings Aviation, Inc.*, 881 F.2d 939, 940 (10th Cir. 1989)).

[67] *Id.*

[68] *In re Peoples*, 764 F.3d 817, 820 (8th Cir. 2014) (quoting *In re Nangle*, 288 B.R. 213, 216 (8th Cir. BAP), *aff'd*, 83 F. App'x 141 (8th Cir. 2003)).

[69] *Id.*

[70] Response Brief in WO-14-024 at 2.

As a result, Debtors have no standing to contest the interim distribution.

Debtors assert that interim distributions by Trustee will be made from property acquired by the estate from third parties as a result of the bankruptcy court's avoidance of fraudulent transfers. Accordingly, Debtors argue that interim distributions will deprive them of a meaningful remedy in their appeal of the bankruptcy court's Order Denying Discharge. In other words, it appears Debtors appeal the Order Authorizing Distribution to prevent their appeal of the Order Denying Discharge from becoming moot.[71] Debtors' argument is meritless.

Although the Trustee combined her fraudulent transfer actions and the complaint objecting to Debtors' discharge in the same adversary proceeding, the remedies are independent of one another. The majority of the fraudulent transfer actions have been settled, and the Trustee has possession of the settlement funds. At least one of the settlements allowed Debtors to retain their homestead without further litigation. If the Order Denying Discharge is affirmed, those settlements remain intact. The avoided fraudulently transferred property belongs to the estate and will be used to pay creditors. Reversing the denial of Debtors' discharge would not change that fact.

Even if this Court were to reverse the bankruptcy court's avoidance of the fraudulent transfers, Debtors have nothing to gain. The property would belong to the third-party transferees. Debtors, therefore have no interest in the property at issue, regardless of the outcome in their appeal of the Order Denying Discharge. As a result, we conclude Debtors have no standing and dismiss their appeal of the Order Authorizing Distribution.

## V. CONCLUSION

The decision of the bankruptcy court denying Debtors a discharge is

---

[71] Debtors did not file a motion to stay the bankruptcy court's Order Denying Discharge pending appeal.

affirmed in all respects. Debtors' appeal of the bankruptcy court's decision authorizing Trustee to make interim distribution is dismissed for lack of standing.