FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

February 4, 2022

Blaine F. Bates
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

IN RE THEOPHILUS SHAWN
WILLIAMS,

Debtor.

_____

THEOPHILUS SHAWN WILLIAMS,

Appellant,

v.

ADAM M. GOODMAN, Chapter 13
Trustee and EMESE WILLIAMS,

Appellees.

BAP No. CO-21-024


Bankr. No. 18-11655
Chapter 13


OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado
_____

Before **MICHAEL**, **PARKER**, and **THURMAN**, Bankruptcy Judges.
_____

**MICHAEL**, Bankruptcy Judge.
_____

The chapter 13 trustee in Theophilus Shawn Williams's bankruptcy case was in a

pickle. The trustee was ready to start making distributions to a class of creditors under Mr.

---

[1]This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

Williams's confirmed chapter 13 plan. One of those potential creditors was Mr. Williams's former spouse Emese Williams ("Ms. Williams"), who had filed a proof of claim asserting amounts owed based on a prepetition divorce court order directing the sale of Mr. Williams's real property and ordering an equitable division of the sale proceeds. The problem for the chapter 13 trustee was that Ms. Williams had also filed an adversary proceeding against Mr. Williams, asserting that she was not merely an unsecured creditor but instead an equitable co-owner of Mr. Williams's real property and sale proceeds. Although the bankruptcy court entered a judgment in favor of Ms. Williams on that issue, Mr. Williams appealed. The trustee would not know until the appeal in the adversary proceeding is finally resolved whether to make plan distributions to Ms. Williams (if she is an unsecured creditor) or instead only to other unsecured creditors (if Ms. Williams is not a creditor but instead a co-owner of the property and proceeds).

Wanting to make the plan distributions only once, and only to the proper party or parties, the chapter 13 trustee filed a motion with the bankruptcy court, asking for guidance. The bankruptcy court ordered the trustee to hold Ms. Williams's potential plan distributions in trust pending the outcome of the appeal in the adversary proceeding. Mr. Williams now appeals that disbursement order. Finding no abuse of discretion in the bankruptcy court's common-sense resolution of the distribution issue, we affirm.

## I.    BACKGROUND

### A.    Dissolution-of-marriage action

Ms. Williams and Mr. Williams were previously married and were parties to a dissolution-of-marriage action filed in the District Court of Weld County, Colorado (the

"State Court"). After the parties filed sworn financial statements, the State Court entered *Permanent Orders* in the proceeding on May 23, 2017 and September 12, 2017,[2] both of which dealt with the parties' real and personal property, including their marital residence at 10167 Falcon Street, Firestone, Colorado (the "Property") and Mr. Williams's 401(k) account with Halliburton. Through the May 23, 2017 Permanent Orders, Ms. Williams and Mr. Williams agreed (and were ordered) to sell the Property, with each party to receive 50% of the net sale proceeds after payment of all costs related to the sale. The parties also agreed (and were ordered) that—starting in April 2017—Ms. Williams would receive $900 per month of rental income from the Property, which Mr. Williams had leased to a third party, and that the parties would equally divide the funds in Mr. Williams's 401(k) account, payable within thirty days of receipt of the proceeds from the sale of the Property.

The Property was not listed for sale by the deadline set in the May 23, 2017 Permanent Orders. Apparently because of that delay, in the September 12, 2017 Permanent Orders, the State Court awarded Ms. Williams the first $24,800 of the proceeds from the sale of the Property, with the remaining sale proceeds to be divided equally. With respect to the 401(k) account, the State Court found Mr. Williams withdrew all of the funds from the account and failed to pay Ms. Williams her one-half share, so the court reduced Ms. Williams's share of the 401(k) account to a judgment in the amount of $7,121.50, with 8% annual interest. With respect to the rental payments that Mr. Williams failed to turn over,

---

[2] Ms. Williams's App. at 28, 24. Citations to the parties' appendices include the name of the party filing the appendix ("Debtor," "Ms. Williams," or "Trustee").

the State Court likewise entered a judgment in Ms. Williams's favor in the amount of $4,500, with 8% annual interest. The September 12, 2017 Permanent Orders required Mr. Williams to satisfy those judgment debts, along with another judgment for past-due child support and maintenance payments, from the proceeds of the sale of the Property.

By January 2018, the Property still had not been sold. Ms. Williams filed a motion to enforce the Permanent Orders, and on March 3, 2018, the State Court entered an order (the "Enforcement Order")[3] appointing Kathryn Ruhl as the realtor and requiring the parties to sign a listing contract with Ruhl for the Property at a price determined by Ruhl, to cooperate with Ruhl, and to appear for a status conference on March 13, 2018.

**B.    Bankruptcy filing**

On March 7, 2018, before the ordered status conference and before the Property was sold, Mr. Williams filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court").

**C.    Ms. Williams's proofs of claim**

On April 16, 2018, Ms. Williams filed three proofs of claim, which appeared on the claims register as Claims 5, 6, and 7. Claim 5[4] listed the amount of Ms. Williams's claim as the first $28,400 plus 50% of the remaining proceeds from the sale of the Property.[5]

---

[3] Ms. Williams's App. at 33.

[4] Ms. Williams's App. at 3.

[5] Ms. Williams filed an amended proof of claim on May 25, 2021 to correct an error on line 7 of Claim 5 (changing $28,400 to $24,800 when listing the amount of the claim as the first $24,800 plus 50% of the remaining proceeds from the sale of the Property). Ms. Williams's App. at 19.

Claim 5 had four attachments, including the May 23, 2017 and September 12, 2017 Permanent Orders, the Enforcement Order, and a letter prepared by counsel that detailed the history of the dissolution-of-marriage action and that claimed (among other things) an interest in the Property as Ms. Williams's share of the marital asset.

Claim 6[6] asserted a claim for $7,121.50 based on the September 12, 2017 Permanent Orders. Claim 6 had the same four attachments, including the letter prepared by counsel that detailed the history of the dissolution-of-marriage action and that explained (among other things) that the $7,121.50 claim amount was based on the judgment for Mr. Williams's failure to pay Ms. Williams her share of Mr. Williams's 401(k).

Claim 7[7] asserted a claim for $4,500 based on the September 12, 2017 Permanent Orders. Claim 7 had the same four attachments, including the letter prepared by counsel that detailed the history of the dissolution-of-marriage action and that explained (among other things) that the $4,500 claim amount was based on the judgment for Mr. Williams's failure to pay Ms. Williams the monthly $900 rental income.

### D.    Mr. Williams's chapter 13 plan

Mr. Williams filed no less than six chapter 13 plans during the course of his case. Ultimately, the amended chapter 13 plan filed on June 24, 2020[8] was confirmed on June 25, 2020, prior to disposition of the Adversary Proceeding (discussed below). The confirmed plan classified general unsecured claims as Class Four claims, but the plan made

---

[6] Trustee's App. at 33.

[7] Trustee's App. at 49.

[8] Trustee's App. at 65.

no specific reference to Ms. Williams's Claims 5, 6, or 7, which were all potentially allowable as general unsecured claims.

### E.     Adversary Proceeding and Mr. Williams's related appeal

On June 18, 2018, Ms. Williams filed a complaint against Mr. Williams in the Bankruptcy Court, commencing an adversary proceeding (the "Adversary Proceeding") and asserting four claims for relief, including claims for (a) a determination of her ownership interest in the Property and its sale proceeds pursuant to 11 U.S.C. § 541(d), and a judgment imposing an equitable trust over the Property to carry out the terms of the orders entered by the State Court; (b) denial of Mr. Williams's discharge pursuant to 11 U.S.C. § 1325(a)(3), § 1325(a)(7), and § 1325(a)(4), or alternatively, dismissal of Mr. Williams's bankruptcy case pursuant to 11 U.S.C. § 1307(c)(11); (c) denial of Mr. Williams's discharge pursuant to 11 U.S.C. § 727; and (d) a determination that the amounts owed to her by Mr. Williams as determined by the State Court are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and § 523(a)(4).

The Adversary Proceeding spawned eighteen months of counterclaims, amended claims, and amended counterclaims. By the time of trial, the Bankruptcy Court had dismissed all but three claims between the parties, only one of which is relevant to this appeal. In her first remaining claim,[9] Ms. Williams sought a determination of her

---

[9] *Verified Amended Complaint to Determine Plaintiff's Equitable Interest in Property (11 U.S.C. § 541(d)) and Objecting to Dischargeability (11 U.S.C. § 523)*, Adv. No. 18-01197, ECF No. 27 (Bankr. D. Colo. March 1, 2019). This Opinion refers to certain documents filed in the Bankruptcy Court that were not included in the parties' appendices. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records in [their own] court and certain other courts

ownership interest in the Property and its sale proceeds pursuant to § 541(d), and a judgment imposing an equitable trust over the Property to carry out the terms of the orders entered by the State Court.

On January 8, 2021, after a trial on the merits, the Bankruptcy Court entered an *Order* (the "Adversary Order") and *Judgment*. Under the Adversary Order and Judgment, the Bankruptcy Court—among other things—entered relief in favor of Ms. Williams on her claim under § 541(d), concluding that her vested equitable interest in the Property is not property of Mr. Williams's bankruptcy estate. The Bankruptcy Court later denied Mr. Williams's request to alter or amend the court's findings and conclusions on that issue. Mr. Williams appealed the Adversary Order and Judgment to this Court. That decision has been affirmed. The Adversary Order and Judgment remain in full force and effect.

**F.      The chapter 13 Trustee's Disbursement Motion and Mr. Williams's related appeal**

Meanwhile, in the underlying bankruptcy case, the chapter 13 trustee (the "Trustee") had disbursed funds to all higher priority classes under Mr. Williams's confirmed chapter 13 plan and was ready to begin pro rata disbursements on account of Class Four general unsecured claims, which potentially included Ms. Williams's Claims 5, 6, and 7. In an abundance of caution, the Trustee filed a motion (the "Disbursement Motion")[10] on April

---

concerning matters that bear directly upon the disposition of the case at hand."); *In re Schupbach*, 607 Fed. App'x 831, 838 (10th Cir. May 19, 2015) (unpublished) (holding the appellate court may take judicial notice of the underlying bankruptcy docket).

[10] Trustee's App. at 85.

1, 2021, seeking guidance from the Bankruptcy Court as to how funds should be disbursed in light of the pending appeal of the Adversary Order and Judgment.

Both Ms. Williams and Mr. Williams filed responses[11] to the Disbursement Motion. Ms. Williams proposed that the Trustee make pro rata disbursements on Claims 6 and 7 and hold any disbursements on Claim 5 in trust until all appeals of the Adversary Order and Judgment are resolved. Mr. Williams argued for disbursement on all Class Four general unsecured claims pro rata despite the Adversary Order—put another way, Mr. Williams wanted to treat Ms. Williams's Claim 5 as a general unsecured claim even though the Bankruptcy Court had concluded Ms. Williams had an ownership interest in the Property and proceeds and not a mere unsecured claim.

On June 4, 2021, the Bankruptcy Court issued an order[12] regarding the Disbursement Motion (the "Disbursement Order"). The Bankruptcy Court held that the Trustee shall disburse funds pro rata on Claims 6 and 7 as Class Four general unsecured claims, and that all pro rata disbursements with respect to Claim 5 shall be held pending resolution of all appeals of the Adversary Order and Judgment. The Bankruptcy Court further held that "[t]o the extent the Adversary Order is affirmed, Ms. Williams is directed to immediately withdraw Claim No. 5. To the extent the Adversary Order is reversed, the Trustee shall disburse those funds held in trust to Ms. Williams."[13]

---

[11] Debtor's App. at 15, 17.

[12] Trustee's App. at 87.

[13] Trustee's App. at 89.

On June 11, 2021, Mr. Williams filed a notice of appeal of the Disbursement Order.[14]

## II.    JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[15]

The BAP has already concluded that the Disbursement Order is a final order. A motions panel consisting of Judges Cornish, Somers, and Parker denied the Trustee's motion to dismiss the appeal as interlocutory,[16] concluding instead that the Disbursement Order is a final order. Mr. Williams filed his notice of appeal timely on June 11, 2021, within fourteen days of entry of the June 4, 2021 Disbursement Order.[17] Neither party elected to have the district court hear the appeal. Therefore, this Court has jurisdiction over this appeal.

---

[14]  Debtor's App. at 29.

[15] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[16] *Order Denying Motion to Dismiss*, BAP Appeal No. 21-24, ECF No. 30.

[17] *See* Fed. R. Bankr. P. 8002(a)(1).

## III.    STANDARD OF REVIEW

A bankruptcy court order requiring distributions on account of a contested claim to be held in trust pending the outcome of an appeal is reviewed for an abuse of discretion.[18]

## IV.    DISCUSSION

The Trustee was rightfully concerned about the risk of making chapter 13 plan distributions to the wrong party, so he asked the Bankruptcy Court for guidance. The Bankruptcy Court gave such guidance by ordering chapter 13 plan distributions to Ms. Williams to be held in trust pending the outcome of the appeal in BAP No. CO-21-002. The Disbursement Order was a logical resolution of the issue of how the Trustee should make distributions, if at all, on Ms. Williams's Claim 5 while the appeal in BAP No. CO-21-002 is pending.[19] The Bankruptcy Court did not abuse its discretion in applying common sense to an ongoing dispute between former spouses.

In an effort to avoid the application of common sense, Mr. Williams makes several arguments. Mr. Williams argues that the Trustee and creditors—including Ms. Williams—

---

[18] *Cf. Manchester v. Funderburgh (In re Funderburgh)*, 526 B.R. 361, 370 (10th Cir. BAP 2015) (reviewing bankruptcy court order allowing interim distributions for an abuse of discretion; citing *Braunstein v. McCabe*, 571 F.3d 108, 120 (1st Cir. 2009) (Congress gave bankruptcy courts broad discretion in passing on a wide range of problems relating to administration of bankruptcy estates) and *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 340 (3d Cir. 2006) (bankruptcy courts have broad authority in preventing injustice or unfairness in administration of bankruptcy estates)).

[19] *Cf.* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); Fed. R. Bankr. 8007(e)(2) (subject to the authority of the district court, BAP, or court of appeals, the bankruptcy court may issue appropriate orders during the pendency of an appeal to protect the rights of all parties in interest).

are bound by his confirmed chapter 13 plan and by Ms. Williams's filed Claim 5. According to Mr. Williams, since no party objected to Claim 5, it was deemed allowed as a general unsecured claim that was conclusively treated in Mr. Williams's confirmed chapter 13 plan, and entitled to a res judicata and collateral estoppel effect regarding the nature of Ms. Williams's interest in the Property and proceeds. Based on that alleged conclusive determination, Mr. Williams argues that the Bankruptcy Court erred in ordering the Trustee to hold unsecured creditor distributions in trust pending the outcome of the appeal in BAP No. CO-21-002 rather than distributing plan payments to all unsecured creditors, including (allegedly) Ms. Williams. And according to Mr. Williams, it was appropriate for his chapter 13 plan to make such a binding determination because Ms. Williams's claim of an ownership interest in the Property and proceeds need not have been raised in an adversary proceeding in any event. It is not difficult to glean Mr. Williams's intentions. He seeks to make an end run around the Adversary Order and Judgment by saying, in effect, the Adversary Proceeding was rendered meaningless by the confirmation of his chapter 13 plan. News to all of us, to be sure. Unfortunately for Mr. Williams, he makes his preclusion arguments in the wrong appeal.

The issue of whether Ms. Williams had an ownership interest in the Property and proceeds or merely an unsecured claim was raised and briefed by the parties in BAP No. CO-21-002. Although Mr. Williams mentioned in that appeal the confirmation of his chapter 13 plan and the filing of Claim 5, he never argued that the plan and Claim 5 had a res judicata or collateral estoppel effect on the determination of Ms. Williams's interest in

the Property and proceeds.[20] Mr. Williams cannot raise arguments in this appeal that should have been raised several months earlier in BAP No. CO-21-002.[21]

Even if the BAP considers those preclusion arguments, they fail on the merits. First, Mr. Williams's chapter 13 plan is completely silent as to the treatment of Ms. Williams's Claim 5, so no plan determination exists that would have preclusive effect on how Ms. Williams's Claim 5 should be treated.

Second, as the Bankruptcy Court noted, Ms. Williams was entitled to file Claim 5 as a precautionary measure in case her ownership cause of action in the Adversary Proceeding fell short. Without a filed proof of claim, she would not be entitled to distributions if she lost on her ownership cause of action.

Third, contrary to Mr. Williams's assertion, Ms. Williams's claim for determination of an ownership interest in the Property and proceeds falls squarely within the requirements of an adversary proceeding.[22] Ms. Williams was correct to seek a determination of her ownership interest through the filing of the Adversary Proceeding rather than through a claim-objection contested matter or through the chapter 13 plan process.

---

[20] *See Exum v. United States Olympic Comm.*, 389 F.3d 1130, 1133 n. 4 (10th Cir. 2004) ("Scattered statements in the appellant's brief are not enough to preserve an issue for appeal.")

[21] *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue.").

[22] *See* Fed. R. Bankr. P. 7001(2) (an adversary proceeding includes any proceeding to determine the validity, priority, or extent of an interest in property, with exceptions not applicable here).

## V.    CONCLUSION

We **AFFIRM** because the Bankruptcy Court did not abuse its discretion in entering the Disbursement Order and requiring distributions on Ms. Williams's Claim 5 to be held in trust pending the outcome of the appeal in the Adversary Proceeding.