**FILED**
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**August 20, 2019**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION*

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| In re ALEXANDER L. BEDNAR, | BAP No. WO-18-099 |
| Debtor. | |
| _____ | |
| ALEXANDER L. BEDNAR, | Bankr. No. 15-11916 |
| | Adv. No. 18-01096 |
| Plaintiff - Appellant, | Chapter 7 |
| v. | |
| RCB BANK, FRANKLIN AMERICAN MORTGAGE COMPANY, FANNIE MAE, and OKLAHOMA COUNTY SHERIFF, | OPINION |
| Defendants - Appellees. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Oklahoma Western

_____

Before **ROMERO**, **JACOBVITZ**, and **MCNAMARA**,[1] Bankruptcy Judges.

_____

**JACOBVITZ**, Bankruptcy Judge.

_____

---

* This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

[1] Thomas B. McNamara, Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

Alexander Bednar appeals the bankruptcy court's dismissal of an adversary proceeding asserting violations of the discharge injunction, breach of a settlement agreement, and conspiracy. All of the appellant's claims stem from his disagreement with final state court orders for foreclosure of debts secured by his former primary residence. He also appeals the bankruptcy court's order denying his request for a preliminary injunction. The bankruptcy court concluded that all the claims in the adversary proceeding (including the request for preliminary injunctive relief) were barred under the *Rooker-Feldman* doctrine as impermissible collateral attacks on final state court judgments. The bankruptcy court also determined that the appellant failed to state a claim upon which relief can be granted. We AFFIRM.

## I.      Factual and Procedural Background

Alexander Bednar ("Mr. Bednar") and his ex-wife owned a home in Edmond, Oklahoma (the "home"). They pledged their home to secure two promissory notes, resulting in a first mortgage to Franklin American Mortgage Company ("Franklin") and a second mortgage to RCB Bank.[2] Mr. Bednar defaulted on the promissory note and mortgage held by RCB Bank in late 2014. RCB Bank filed a petition to foreclose on its second mortgage on January 13, 2015 in the Oklahoma District Court for Oklahoma County (the "State Court"). Mr. Bednar defaulted on the promissory note and first mortgage held by Franklin in May 2015.

---

[2]      Fannie Mae insured the promissory note made to Franklin.

Mr. Bednar filed a Chapter 7 petition under the United States Bankruptcy Code, 11 U.S.C. § 301, on May 20, 2015, staying RCB Bank's foreclosure action.[3] The bankruptcy court granted RCB Bank relief from the automatic stay to continue the foreclosure action on September 14, 2015. The State Court granted RCB Bank an *in rem* foreclosure judgment on January 22, 2016. The judgment provided that the foreclosure sale would be subject to the lien of Franklin's first mortgage. Thereafter, RCB Bank purchased the home at a sheriff's sale via credit bid, subject to the lien of Franklin's first mortgage. The State Court confirmed the sheriff's sale to RCB Bank on October 14, 2016. Mr. Bednar did not appeal either the foreclosure judgment granted to RCB Bank or the order confirming the sheriff's sale to RCB Bank subject to the lien of Franklin's first mortgage and the time to do so under Oklahoma law expired.[4]

RCB Bank also filed an adversary proceeding against Mr. Bednar in his Chapter 7 case, seeking to have its claim declared nondischargeable pursuant to § 523(a)(2)(B). After participating in a bankruptcy court ordered mediation, RCB Bank and Mr. Bednar entered into a settlement agreement whereby RCB Bank would quitclaim title to the home to Mr. Bednar or his designee upon Mr. Bednar's meeting certain conditions.[5] The

---

[3]     All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[4]     Although Mr. Bednar filed motions to set aside or otherwise reconsider the State Court's foreclosure judgment and order confirming sale to RCB Bank, none of these motions tolled Oklahoma's thirty day deadline to appeal a judgment or order. The State Court denied all Mr. Bednar's motions to set aside or otherwise reconsider the foreclosure judgment and order confirming sale.

[5]     The settlement agreement is not part of the record of appeal. *See Order Denying Construed Motion to Supplement the Record and Motion to Seal*, BAP ECF No. 90.

parties recorded a quitclaim deed vesting title in the home to Mr. Bednar's designee, the MFB Revocable Trust, on August 1, 2018. The MFB Revocable Trust is a trust that Mr. Bednar and other family members established for the benefit of Mr. Bednar's minor child. Mr. Bednar resided in the home with his child.

In the meantime, Mr. Bednar received a Chapter 7 discharge on September 11, 2015, and Franklin filed a petition to foreclose its first mortgage on September 29, 2016. The State Court entered an *in rem* foreclosure judgment in favor of Franklin on June 11, 2018.[6] At the time of entry of the foreclosure judgment, RCB Bank held record title to the home subject to Franklin's mortgage. Franklin submitted the winning bid at the August 9, 2018, sheriff's sale.[7] The State Court confirmed the sheriff's sale on September 6, 2018. Fannie Mae, by way of its contractual agreements with Franklin, received record title to Mr. Bednar's home. Mr. Bednar did not appeal either the foreclosure judgment in favor of Franklin or the order confirming the sheriff's sale and the time to do so under Oklahoma law has expired.[8]

This chart sets forth a timeline of these events.

---

[6] Franklin originally received a default judgment of foreclosure on April 30, 2018; however, based on a procedural change in the law, Franklin moved to vacate that judgment and obtained a second foreclosure judgment entered on June 11, 2018.

[7] Mr. Bednar initially placed the highest bid but failed to tender good funds resulting in a sale to the second highest bidder, Franklin.

[8] Although Mr. Bednar filed motions to set aside or otherwise reconsider the State Court's foreclosure judgment and order confirming sale to Franklin, none of these motions tolled Oklahoma's thirty (30) day deadline to appeal a judgment or order. The State Court denied all Mr. Bednar's motions to set aside or otherwise reconsider the foreclosure judgment and order confirming sale.

| Date | Event |
|---|---|
| 01-13-2015 | RCB Bank commences state court action to foreclose its second mortgage |
| 05-20-2015 | Mr. Bednar commences a Chapter 7 case |
| 08-17-2015 | RCB Bank commences nondischargeability action |
| 09-11-2015 | Mr. Bednar is granted a discharge in the Chapter 7 case |
| 09-14-2015 | Bankruptcy court grants stay relief permitting continuation of the RCB Bank foreclosure action *in rem* |
| 01-22-2016 | State court enters *in rem* foreclosure judgment in favor of RCB Bank on its second mortgage; foreclosure remains subject to first mortgage |
| 09-29-2016 | Franklin commences state court action to foreclose its first mortgage |
| 10-14-2016 | State court confirms foreclosure sale to RCB Bank; sale is subject to Franklin's first mortgage |
| 11-08-2016 | Sheriff's deed to RCB Bank is recorded; title in grantee is subject to Franklin's first mortgage |
| 03-02-2017 | Settlement of nondischargeability action reached; RCB Bank to quitclaim its interest in the home to Bednar or his designee |
| 06-11-2018 | State court enters *in rem* foreclosure judgment in favor of Franklin; terminating RCB Bank's record title to the home |
| 08-01-2018 | RCB Bank's quitclaim deed transferring the home to MFB Revocable Trust pursuant to the settlement between RCB Bank and Bednar is recorded |
| 08-09-2018 | Franklin submits winning bid at sheriff's foreclosure sale on its first mortgage |
| 09-06-2018 | State court confirms sheriff's sale to Franklin |
| 09-09-2018 | Sheriff's deed to  Fannie Mae, Franklin's designee, is recorded |

After the conclusion of Franklin's foreclosure action, Mr. Bednar filed an adversary proceeding in the bankruptcy court on October 17, 2018. Mr. Bednar alleged Franklin, Fannie Mae, and the Oklahoma County Sheriff (the "Sheriff") violated § 524's discharge injunction by carrying out the second foreclosure and subsequent sale. Mr. Bednar alleged the defendants conspired to effectuate a duplicative sale of the home and obtain an *in personam* judgment against him. The specific discharge violations complained of are (1) Franklin's initiation of the second foreclosure proceeding; (2) Franklin's obtaining an *ex parte* default judgment against him in that proceeding; and (3)

5

Franklin conspiring with the Sheriff to credit bid $528,000 at the foreclosure sale.[9] Mr. Bednar also sought an injunction to stay his and his child's removal from the home and requested an immediate hearing.

The bankruptcy court conducted a hearing on Mr. Bednar's emergency request for injunction on October 19, 2018. The bankruptcy court issued an order denying Mr. Bednar's request for an emergency injunction concluding: (1) there was no likelihood of success on the merits; (2) there was no emergency; and (3) Mr. Bednar had not complied with the Federal Rules of Bankruptcy Procedure or local rules in requesting an injunction.[10]

Mr. Bednar supplemented his complaint on October 23, 2018, adding RCB Bank as a defendant. Mr. Bednar alleged RCB Bank breached the settlement agreement by failing to deliver a valid deed to the home to him or his designee and by conspiring with Franklin to deprive him of the benefit of his bargain under the settlement agreement – title to the home free and clear of liens. He sought enforcement of the settlement agreement and damages.[11] Mr. Bednar also filed a request for an expedited hearing on his renewed request for an injunction.[12] The bankruptcy court set a telephonic hearing on the

---

[9] *Petition for Immediate and Permanent Equitable Relief Due to Violation of the Discharge Injunction* at 5, *in* Appellant's App. at 15.
[10] *Order Denying Emergency Motion [Doc. 10]*, *in* Appellant's App. at 226.
[11] *Supplemental Petition*, *in* Appellants' App. at 142 (alleging breach because the quitclaim deed was executed in February 2018, when the transaction did not occur until July 2018).
[12] *Request for Expedited Hearing and Shortened Response Time Regarding Injunction Pending Hearing on the Merits*, *in* Appellant's App. at 145.

matters for November 1, 2018.[13] Fannie Mae, RCB Bank, and the Sheriff filed responses and motions to dismiss on October 31, 2018.

At the telephonic hearing, the bankruptcy court heard Mr. Bednar's legal arguments, proffers of evidence, and unsworn statements. However, Mr. Bednar, who requested the emergency hearing, never requested a formal in-court evidentiary hearing or otherwise sought to introduce evidence. The bankruptcy court gave Mr. Bednar until November 2, 2018 to respond to the opposing parties' motions to dismiss and took the matters under advisement. Mr. Bednar amended his complaint and again objected to the Defendants' motions to dismiss on November 2, 2018. Mr. Bednar filed a second amendment to his complaint on November 7, 2018.

The bankruptcy court entered an order denying Mr. Bednar's request for an injunction on November 8, 2018, concluding Mr. Bednar had again failed to meet his burden in seeking injunctive relief (the "Injunction Order"). The bankruptcy court also entered an order dismissing Mr. Bednar's adversary proceeding on November 9, 2018 (the "Dismissal Order"). The bankruptcy court concluded Mr. Bednar's allegations were an attempt to have the bankruptcy court review the State Court's final foreclosure judgments and orders of sale in contravention of the *Rooker-Feldman* doctrine. Furthermore, the bankruptcy court determined Mr. Bednar failed to allege plausible allegations that any defendant violated the discharge injunction or conspired together to abuse the foreclosure process. Finally, the bankruptcy court determined that Mr. Bednar

---

[13] *Order and Notice of Telephonic Hearing*, *in* Appellant's App. at 192.

lacked standing to challenge actions regarding the home. Mr. Bednar made several requests for a stay pending appeal, all of which were denied.

## II. Jurisdiction and Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit."[14] An order dismissing an adversary proceeding is final for purposes of appellate review.[15] Upon dismissal of the adversary proceeding, the order denying injunctive relief merged into the final order of dismissal.[16] We have jurisdiction to hear an appeal of an interlocutory order that merged into a final order dismissing an adversary proceeding.[17] Neither party in this case elected for this appeal of the bankruptcy court's orders to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over this appeal.

Considering each of the bankruptcy court's orders, an order denying a request for a preliminary injunction is reviewed for abuse of discretion.[18] The abuse of discretion standard requires the appellate court to give deference to the trial court's "evaluation of

---

[14] *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

[15] *Funderburgh v. Manchester (In re Funderburgh)*, 526 B.R. 361, 369 (10th Cir. BAP 2015).

[16] *Expert S. Tulsa, LLC v. First Am. Title Ins. Co. (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 642 n.41 (10th Cir. BAP 2014) (stating interlocutory orders and judgments merged into the order dismissing an adversary proceeding).

[17] *Id*.

[18] *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (citing *Utah Licensed Beverage Ass'n v. Leavitt*, 256 F.3d 1061, 1065 (10th Cir. 2001)).

the salience and credibility of testimony, affidavits, and other evidence. We will not challenge that evaluation unless it finds no support in the record, deviates from the appropriate legal standard, or follows from a plainly implausible, irrational, or erroneous reading of the record."[19]

The bankruptcy court's dismissal of an adversary proceeding for failure to state a claim is reviewed *de novo*.[20] "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"[21]

### III. Issues Preliminary to Court's Review

#### a. Standing

The Supreme Court's standing jurisprudence "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement . . . and prudential standing which embodies judicially self-imposed limits on the exercise of federal jurisdiction."[22] Without further explanation, the bankruptcy court concluded that Mr. Bednar "lack[ed] standing to challenge actions regarding [his home] since he has no

---

[19]     *Id.* (quoting *United States v. Robinson*, 39 F.3d 1115, 1116 (10th Cir. 1994)).
[20]     *Gee v. Pacheco*, 627 F.3d 1187, 1183 (10th Cir. 2010) ("We review de novo the grant of a Rule 12(b)(6) motion to dismiss . . . ." (citing *Howard v. Waide*, 534 F.3d 1227, 1242-43 (10th Cir. 2008))).
[21]     *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).
[22]     *The Wilderness Society v. Kane Ct.y, Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011); *see also VR Acquisitions, LLC v. Wasatch Cty.*, 853 F.3d 1142 (10th Cir. 2017) (explaining the difference between constitutional and prudential standing).

ownership in interest in that property."[23] This holding appears to implicate prudential standing concerns (*i.e.* person aggrieved). But, the bankruptcy court did not clearly distinguish between constitutional and prudential standing. Accordingly, we consider both "strands" of standing.

### 1. Constitutional Standing

Although the appellees have not objected to Mr. Bednar's standing to proceed in this appeal, constitutional standing is a jurisdictional question.[24] As a federal court, "we have an independent duty to examine our own jurisdiction."[25] "Because constitutional standing is necessary to the court's jurisdiction, as a general rule it must be addressed before proceeding to the merits."[26] As such, the question of whether a plaintiff has alleged a "case or controversy . . . . is the threshold question in every federal case," is considered prior to the substantive issues raised by the parties.[27]

"The Constitution limits the jurisdiction of federal courts to '[c]ases and [c]ontroversies.'"[28] Supreme Court cases establish that to meet constitutional minimums

---

[23] Dismissal Order at 10, *in* Appellant's App. at 390.

[24] *Utah Animal Rights Coal. v. Salt Lake Cty.*, 566 F.3d 1236, 1240 (10th Cir. 2009) (citing *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1087 (10th Cir. 2006) (en banc) ("Because [standing] goes to our jurisdiction, we must address it before proceeding to the merits.")).

[25] *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1223 (10th Cir. 2012) (quoting *Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274 (10th Cir. 2001)).

[26] *Carolina Cas. Ins. Co. v. Pinnacol Assurance*, 425 F.3d 921, 926 (10th Cir. 2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 96-97, 97 n.2 (1998)).

[27] *Warth v. Seldin*, 422 U.S. 490, 498 (1975).

[28] *Utah Animal Rights Coal.*, 566 F.3d at 1240 (quoting U.S. Const. art. III, § 2); *Cornhusker Cas. Co. v Skaj*, 786 F.3d 842, 851 (10th Cir. 2015).

of standing a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[29] "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[30] It is the plaintiff's burden to establish these elements are met.[31]

As this appeal comes to us on a motion to dismiss for failure to state a claim upon which relief may be granted, the Court must "presume[] all of [the] plaintiff's factual allegations are true and construe[] them in the light most favorable to the plaintiff."[32] As this presumption does not apply to a plaintiff's legal conclusions,[33] "[f]or purposes of standing, we must assume the [p]laintiffs' claim has legal validity."[34] In other words, an

---

[29] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (first citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992), and then citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)); *Lujan v. Defenders of Wildlife*, 504 U.S. at 560 (1992) (standing requires (1) "an invasion of a legally protected interest" which is "concrete and particularized," and "actual or imminent, not 'conjectural' or 'hypothetical;'" (2) that is "fairly traceable to the challenged action of the defendant;" and (3) that is likely to be "redressed by a favorable decision.").

[30] *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560).

[31] *Id.* (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).

[32] *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

[34] *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1093 (10th Cir. 2006) (en banc) (citing *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1256 (10th Cir. 2004)

appellate court does not decide the legal issues presented in the appeal to decide whether an appellant has standing for the appellate court to address those issues.

In Mr. Bednar's complaint, as supplemented, he alleged facts intended to lead to the conclusions that (1) RCB Bank breached the settlement agreement by not conveying title to the home to Mr. Bednar's designee, a family trust; and (2) RCB Bank's foreclosure terminated Franklin's lien rights in the home, rendering Franklin's entire foreclosure improper and in violation of the discharge injunction. Under Mr. Bednar's theory of the case, but for the wrongful acts of RCB Bank and Franklin, under the settlement agreement he would have the right to own the home free and clear of liens and the right to give his property (the home) to a family trust established for the benefit of his minor child (the MFB Revocable Trust). Assuming this theory is correct, RCB Bank's failure to abide by the settlement agreement and Franklin's unlawful foreclosure of an invalid lien affected Mr. Bednar's contractual and property rights, principally being the loss of property and wrongful dispossession of Mr. Bednar and his minor child from the home. Injury to contractual rights and property interests represent harms sufficient to confer constitutional standing to a plaintiff.

In addition, Mr. Bednar has constitutional standing to appeal the dismissal of the adversary proceeding claiming violation of the discharge injunction. The discharge injunction is a protection the debtor earns by obtaining a discharge in a bankruptcy case and typically is the principal benefit bestowed on a Chapter 7 debtor.[35]

---

[35] *See Love v. Royal (In re Love)*, No. WY-97-001, 1997 WL 837795, at *1 (10th Cir. BAP July 17, 1997).

12

Accordingly, Mr. Bednar has constitutional standing in this appeal.

### 2. Prudential Standing

No party raised any argument in the bankruptcy court concerning alleged lack of standing. Notwithstanding, the bankruptcy court addressed the issue *sua sponte* through a single sentence at the end of the Dismissal Order. Without any analysis, the bankruptcy court noted a lack of standing to address some or all of the claims. On appeal, the appellees have not asserted any standing argument.

"Prudential standing is not a jurisdictional limitation . . . ."[36] Thus, we are not obligated to consider the issue if not raised by one of the parties. While Mr. Bednar may not have prudential standing to raise some of the claims asserted in the complaint, we believe that the proper course is not to decide the appeal on that basis because none of the parties have argued the issue. Under such circumstances, any prudential standing argument has been forfeited.[37]

---

[36]     *Kerr v. Polis*, 930 F.3d 1190, 1194 (10th Cir. 2019) (quoting *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014)).

[37]     *Finstuen v. Crutcher,* 496 F.3d 1139, 1147 *(*10th Cir. 2007) ("Prudential standing is not jurisdictional in the same sense as Article III standing . . . . We could therefore decline to address this argument, as it was not raised in the court below."); *Grubbs v. Bailes,* 445 F.3d 1275, 1281 (10th Cir. 2006) ("Questions relating to *prudential* standing, however, may be pretermitted in favor of a straightforward disposition on the merits."); *see also Bd. of Miss. Levee Comm'rs v. EPA*, 674 F.3d 409, 417 (5th Cir. 2012) ("Unlike constitutional standing, prudential standing arguments may be waived."); *Independent Living Center of So. Cal., Inc. v. Shewry*, 543 F.3d 1050, 1065 n. 17 (9th Cir. 2008) ("[P]rudential standing is not a jurisdictional limitation on our review.  By failing to articulate any argument challenging . . . prudential standing, the [appellee] has waived that argument.").

### b. Preservation of Issues on Appeal

Appellees assert that Mr. Bednar forfeited his arguments on appeal by failing to adequately address them in his appellate briefs. Generally, concerns over preservation of issues arise when a party fails to adequately present an argument to the trial court.[38] However, the Tenth Circuit recognizes that parties may also forfeit arguments presented to the trial court by failing to adequately address them in appellate briefing.[39] An appellant's opening brief must "contain the appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."[40] As such, appellate courts may "decline[] to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."[41]

Appellees raised these same arguments in a *Combined Motion to Strike Appellant's Brief and Appendix and a Motion to Dismiss.*[42] For the reasons stated in our *Order Denying Motions to Dismiss*,[43] we decline to find that Mr. Bednar forfeited his arguments on appeal.

---

[38]     *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

[39]     *Holmes v. Colo. Coal. for Homeless Long Term Disability Plan*, 762 F.3d 1195, 1199 (10th Cir. 2014) (citing multiple cases for the proposition that failure to adequately brief an argument results in waiver).

[40]     Fed. R. Bankr. P. 8014(a)(8).

[41]     *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (first citing *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1133 n.4 (10th Cir. 2004), and then citing *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995)).

[42]     BAP ECF Nos. 26 and 33.

[43]     BAP ECF No. 55.

## IV. Discussion

Mr. Bednar appeals the bankruptcy court's order dismissing his claims for violation of the discharge injunction, breach of the settlement agreement, and conspiracy based on the *Rooker-Feldman* doctrine and for failure to state a claim upon which relief can be granted. Further, Mr. Bednar appeals the bankruptcy court's order denying injunctive relief. We agree that the dismissed claims are barred by *Rooker-Feldman* and were properly dismissed for failure to state a claim upon which relief can be granted. We also conclude that the bankruptcy court did not err by denying injunctive relief.

### a. The Rooker-Feldman Doctrine and its applicability

Mr. Bednar's second amended complaint[44] (hereafter the "complaint") asserts claims for violation of the discharge injunction, breach of a settlement agreement between RCB Bank and Mr. Bednar, and conspiracy. The bankruptcy court dismissed the claims under the *Rooker-Feldman* doctrine.[45] We begin by examining the *Rooker-Feldman* doctrine and its applicability to the State Court judgments and orders at issue.

The Tenth Circuit has explained that "[t]he *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury caused by the state-court judgment

---

[44] Mr. Bednar filed four complaints. (Bankruptcy Docket Nos. 1, 13, 37, and 39.) It appears that the bankruptcy court considered the second amended complaint, which was the last complaint, as the operative pleading notwithstanding Mr. Bednar's failure to comply with the requirements for amendment under Fed. R. Civ. P. 15, as incorporated by Fed. R. Bankr. P. 7015. The second amended complaint is not a model of clarity.

[45] The *Rooker-Feldman* doctrine is based on a pair of Supreme Court decisions: *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

from bringing a case seeking review and rejection of that judgment in federal court."[46] *Rooker-Feldman* and its progeny do "not deprive a federal court of jurisdiction to hear a claim just because it could result in a judgment inconsistent with a state-court judgment."[47] Instead, the doctrine prohibits "a federal action that tries to *modify or set aside* a state-court judgment because the state proceedings should not have led to that judgment."[48] "*Rooker-Feldman* can bar a federal-court claim [ ] only if 'an element of the claim is that [a prior state-court] judgment was wrongful."[49] *Rooker-Feldman* is jurisdictional in the sense that federal courts do not have jurisdiction to modify or set aside a state court judgment because the state proceedings should not have led to that judgment.[50] Only final state court judgments and orders are entitled to preclusive effect under *Rooker-Feldman*.[51]

Mr. Bednar does not challenge the finality of the State Court judgment foreclosing RCB Bank's second mortgage lien (the "RCB Judgment") and the order confirming the

---

[46] *Miller v. Deutsche Bank Nat'l Tr. Co.* (*In re Miller*), 666 F.3d 1255, 1261 (10th Cir. 2012) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)).

[47] *Mayotte v. U.S. Bank Nat'l Ass'n, as Tr. for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018).

[48] *Id.* (citing *Exxon Mobil*, 544 U.S. at 291).

[49] *Id.* at 1175 (quoting *Campbell v. City of Spencer*, 682 F.3d 1278, 1284 (10th Cir. 2012)).

[50] *Id.* at 1170 ("The jurisdictional doctrine is the *Rooker-Feldman* doctrine, which forbids lower federal courts from reviewing state-court civil judgments.").

[51] *Exxon Mobil*, 544 U.S. at 293 (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S 518, 523 (1986) (explaining the Full Faith and Credit Act, 28 U.S.C. § 1738, "requires the federal court to 'give the same preclusive effect to a state-court judgment as another court of that State would give.'")).

Sheriff's sale to RCB Bank (the "RCB Sale Order").[52] Mr. Bednar did not appeal the

RCB Judgment or the RCB Sale Order and the time to appeal has expired. The RCB

Judgment and the RCB Sale Order are therefore entitled to preclusive effect under

*Rooker-Feldman.*

Mr. Bednar contends the State Court judgment foreclosing Franklin's first

mortgage lien and the order confirming the Sheriff's sale to Franklin are not final for two

reasons. First he argues that the time to appeal Franklin's foreclosure judgment was tolled

because he sought reconsideration of the finding in the judgment that Franklin, as the

holder of the promissory note and mortgage, was "entitled to enforce the [promissory

n]ote."[53] Although Mr. Bednar sought reconsideration of this issue, nothing on the State

Court docket suggests Mr. Bednar tolled the time to file a notice of appeal. Under

Oklahoma law, the deadline for appealing is "within thirty (30) days from the date of the

judgment, decree, or appealable order."[54] That strict deadline may be tolled upon filing a

motion for a new trial or reconsideration within ten days of the entry of the judgment.[55]

However, Oklahoma law confirms that "[t]he time to appeal from a judgment . . . is not

extended or affected by the filing of a motion to . . . modify, vacate or reconsider the

---

[52]  Mr. Bednar states motions challenging the Sheriff's sale "are being set" in the State Court but the record before this Court provides no evidence the RCB Sale Order is not a final, unappealable order. Appellant's Reply Br. to Fannie Mae 13.

[53]  The finding is set forth in the *June 11, 2018 Journal Entry of Judgment* at 4, *in* Appellant's App. at 281.

[54]  Okla. Stat. Ann. tit. 12 § 990(A) (2019).

[55]  Okla. Stat. Ann. tit. 12 § 990.2(A) (2019).

17

judgment . . . that is filed more than ten (10) days after the judgment . . . ."[56] Mr. Bednar did not file a motion to reconsider or a motion for new trial within the statutory deadline of ten days of entry of Franklin's foreclosure judgment. In any event, taking judicial notice of the State Court's docket in Franklin's foreclosure proceeding, it is clear RCB Bank held record title to Mr. Bednar's home on the date of Franklin's foreclosure judgment.[57]

Second, Mr. Bednar argues that the order confirming the sale to Franklin is not final because motions challenging that sale "are being set;"[58] however, the State Court docket revealed no timely filed pending motion to reconsider that would render the order confirming the Sherriff's sale to Franklin non-final.

We conclude that the State Court judgment foreclosing Franklin's first mortgage lien and the order confirming the Sherriff's sale to Franklin are no longer appealable orders and are therefore preclusive under *Rooker-Feldman* in relation to all the claims asserted in the complaint.

---

[56] Okla. Stat. Ann. tit. 12 § 990.2(B) (2019); *see also McMillian v. Holcomb*, 907 P.2d 1034, 1036 (Okla. 1995) ("A timely filed motion for new trial extends the time to appeal; an untimely one does not.").

[57] With the parties' consent at oral argument, this Court took judicial notice of the State Court dockets in the RCB Bank and Franklin foreclosure actions, cases CJ-2015-192 and CJ-2016-5004, and of the documents filed in the foreclosure actions as reflected on the dockets. *See Mills v. Denver Tramway Corp.*, 155 F.2d 808, 812 (10th Cir. 1946) ("[W]hether an appellate court will for the first time take judicial notice of a judicially notable fact rests largely in its own discretion."); *United States v. Birch*, 169 F.3d 666, 671 (10th Cir. 1999) ("Judicial notice may be taken at any time, including on appeal."). We take judicial notice of the dockets in State Court cases CJ-2015-192 and CJ-2016-5004.

[58] Appellant's Reply Br. to Fannie Mae 13.

### b. The bankruptcy court did not err by dismissing the claim for violation of the discharge injunction.

The complaint alleges violations of the discharge injunction in two respects: first, by Franklin's foreclosure of its lien against the home; and second, by Franklin credit bidding its judgment at the Sheriff's sale. Mr. Bednar also argues that Franklin improperly credit bid more than the amount of its judgment in violation of the discharge injunction.

The violation of the discharge injunction claim is largely predicated on Mr. Bednar's position that Franklin forfeited its interest in his home by failing to assert its rights in the RCB Bank foreclosure action. Mr. Bednar argues that under Oklahoma law, Franklin's first mortgage lien against the home was merged into and extinguished by the earlier state court judgment foreclosing RCB Bank's second lien. Mr. Bednar reasons that because Franklin's lien was extinguished under state law by foreclosure of RCB Bank's second lien, Franklin's subsequent purported *in rem* efforts to enforce its first lien were in fact acts taken *in personam* to collect a discharged debt; consequently, Franklin had no right to credit bid. The complaint also alleges Franklin's foreclosure of its lien violated the discharge injunction because (a) the second foreclosure sale to Franklin could not take place while the first Sheriff's sale to RCB Bank was at issue in a pending appeal; (b) Franklin's foreclosure violated the terms of its mortgage; and (c) Franklin's credit bid exceeded the amount of its judgment.

We will start by examining the scope of the discharge injunction and what a debtor must allege and prove to obtain relief for a violation of the discharge injunction.

19

In relevant part, § 524 states:

(a) A discharge in a case under this title-

> (1) voids any judgment at the time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . of this title . . . ;

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . .[59]

Under § 524(a), only acts to collect, recover or offset a discharged debt as a personal liability of the debtor are enjoined. In other words, an act taken *in personam* to collect a debt is enjoined. In contrast, an act taken *in rem* to enforce in interest in property is not enjoined. For example, an act taken *in rem* to enforce a prepetition lien against collateral in which the debtor has an interest is not enjoined by the discharge injunction.[60] We have explained,

> [t]he discharge injunction does not constitute a blanket prohibition against all actions undertaken by creditors after the entry of discharge. Actions to collect against the debtor personally are enjoined. In contrast, *in rem* actions, which include actions to enforce a lien against encumbered property, are not prohibited by the discharge injunction.[61]

---

[59]    11 U.S.C. § 524(a).

[60]    *See Johnson v. Home State Bank,* 501 U.S. 78, 84 (1991) ("a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*"); *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1308 n.6 (10th Cir. 2008) ("The discharge injunction prohibits efforts to collect a debt 'as a *personal liability* of the debtor,' . . . and thus *in rem* rights are not affected.").

[61]    *In re Jester*, No. EO-15-002, 2015 WL 6389290, at *5 (10th Cir. BAP October 22, 2015), *aff'd* 656 Fed. App'x 425 (10th Cir. 2016).

Further, not every violation of the discharge injunction entitles a debtor to relief. The discharge injunction is enforced through the bankruptcy court's civil contempt powers under § 105(a).[62] A creditor may be held in civil contempt for violating the discharge injunction where "there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order."[63] The "fair ground of doubt" standard is an objective standard. There is no fair ground of doubt when the creditor violates a discharge injunction "based on an objectively unreasonable understanding of the discharge order or the statutes that govern its scope."[64] A "creditor's good faith belief" that the discharge injunction does not apply to the creditor's act that violated the discharge injunction does not by itself preclude a civil contempt sanction.[65] Conversely, it is not sufficient to hold a creditor in civil contempt by finding that "the creditor was aware of the discharge order and intended the actions that violated the order."[66]

Next, we will address whether the complaint states a claim for violation of the discharge injunction upon which relief could be granted. Mr. Bednar argues that Franklin's first mortgage lien was extinguished in the RCB Bank foreclosure action. As discussed above, Mr. Bednar is barred by *Rooker-Feldman* from attacking the validity of the state court judgments foreclosing RCB's second mortgage lien and Franklin's first

---

[62]     *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019).
[63]     *Id*. at 1804.
[64]     *Id*. at 1802.
[65]     *Id*.
[66]     *Id*. at 1803.

mortgage lien against the home or attacking the orders confirming the foreclosure sales to RCB Bank and to Franklin pursuant to the judgments. The RCB Bank Judgment expressly provided that the home was to be sold "subject to the mortgage line [sic] of Franklin []."[67] This was consistent with Oklahoma Supreme Court precedent determining that "[t]he foreclosure of [a] junior mortgage [i]s subject to the priority of the senior mortgage."[68] Therefore, Franklin's lien against Mr. Bednar's home remained in place following foreclosure of RCB Bank's junior lien. Similarly, Mr. Bednar's arguments that the second foreclosure sale to Franklin could not take place while the RCB Bank Sale Order was at issue in a pending appeal, and that Franklin's foreclosure violated the terms of its mortgage, are barred by *Rooker-Feldman*.

Our review of Franklin's foreclosure judgment discloses that the State Court granted *in rem* relief against the property, including a right to credit bid up to the amount of the judgment, not *in personam* relief against Mr. Bednar.[69] The order confirming the Sheriff's sale confirmed Franklin's credit bid. As explained above, the discharge injunction enjoins enforcement of a debtor's personal liability for a debt but it does not extinguish the lien against collateral securing the discharged debt and does not enjoin

---

[67] *March 31, 2016 Journal Entry of Judgment* at 5, *in* Appellant's App. at 167. The *Journal Entry of Judgment* repeatedly recognizes that Franklin retained a superior lien. The State Court awarded judgment that "the Plaintiff's right, title and interest in and to the Mortgaged Property [] be a valid lien superior to that of all parties except Franklin . . . ." *Id.*

[68] *Okla. State Bank of Enid v. Dotson*, 235 P. 181, 183 (Okla. 1925).

[69] *June 11, 2018 Journal Entry of Judgment* at 5, *in* Appellant's App. at 282 ("IT IS THEREFORE ORDERED . . . by the Court that the Plaintiff, Franklin American Mortgage Company, have judgment *in rem* against the real property . . . .").

foreclosure of the lien to collect discharged debt. In entering the *in rem* judgment foreclosing on Franklin's lien, the State Court concluded Franklin had a valid lien against the home. An *in rem* proceeding is not a violation of the discharge injunction.[70]

The true objective of Mr. Bednar's allegations before the bankruptcy court was to obtain a review of state law issues already determined by the State Court. Mr. Bednar failed to preserve his appellate rights in either State Court foreclosure proceeding and the decisions in those proceedings have long since become final. Applying *Rooker-Feldman*, we lack jurisdiction to consider these arguments.

Likewise, we find no error in the bankruptcy court's dismissal of Mr. Bednar's claims of violation of the discharge injunction based on Franklin's allegedly credit bidding a deficiency judgment at the Sheriff's sale. In Oklahoma, a judgment creditor foreclosing a first lien may credit bid up to the amount of the creditor's judgment at a foreclosure sale.[71] There is no such thing under Oklahoma law as a credit bid of a deficiency judgment. If the bid exceeds the amount of the judgment, the creditor must pay cash for the excess.[72] If Mr. Bednar means to suggest that Franklin's credit bid was

---

[70] *In re Jester*, No. EO-15-002, 2015 WL 6389290, at *5 (10th Cir. BAP Oct 22, 2015), *aff'd* 656 Fed. App'x 425 (10th Cir. 2016).

[71] *McDonald v. Harrod*, 135 P.2d 979, 981 (Okla. 1943) (citing *Barnard v. First Nat'l Bank of Miami*, 55 P.2d 972 (Okla. 1936)) ("Since the purchaser was the judgment creditor, payment of the purchase price to the sheriff was not necessary, as it was entitled to have the amount of its bid credited on its judgment.").

[72] *Cf. Charles F. Curry Co. v. Goodman*, 737 P.2d 963, 965 (Okla. Civ. App. 1987) (concluding requiring a creditor "to pay cash to the court clerk only to recover all such cash following confirmation of sale of the property would" place "an unnecessary burden" on a creditor.).

in fact an *in personam* bid because Franklin's lien was extinguished by RCB Bank's prior foreclosure judgment, as discussed above, *Rooker-Feldman* prevents Mr. Bednar from making that argument. The RCB Judgment expressly provides that the foreclosure of RCB Bank's second mortgage lien will remain subject to Franklin's first mortgage lien, and *Rooker-Feldman* bars Mr. Bednar from collaterally attacking that judgment. Likewise, *Rooker-Feldman* bars a collateral attack on the Franklin foreclosure judgment, which determined that Franklin had a "a first, prior and superior" lien against the home.[73]

In addition, Mr. Bednar may not now challenge the amount of Franklin's credit bid. The State Court confirmed the sale "for the price of $528,200.00, as credit on [Franklin's] judgment."[74] The appropriate time to challenge Franklin's credit bid was at the hearing on the confirmation of the Sheriff's sale. Mr. Bednar did not appeal the *Order Confirming Sale*, and the time to do so has expired. Under *Rooker-Feldman*, Mr. Bednar cannot collaterally attack that order in bankruptcy court by claiming a discharge injunction violation based on an allegation that Franklin's credit bid was excessive under Oklahoma law.

In any event, Franklin's credit bid did not exceed the amount of its judgment. Franklin was entitled to bid up to the amount of its judgment at the Sheriff's sale. The record indicates the principal due on the promissory note as of the date Franklin filed the foreclosure action was $433,574.38, not including interest, escrow advancements, and

---

[73]     *June 11, 2018 Journal Entry of Judgment* at 4, *in* Appellant's App. at 281.
[74]     *Order Confirming Sale* at 1, *in* Appellant's App. at 120.

attorney fees.[75] In addition to the unpaid principal balance of the promissory note, Franklin's judgment amount included these amounts plus "the further sum of all advances by [Franklin], if any, for taxes, insurance premiums, or expenses . . . and for all costs of [the foreclosure] action."[76] Both the promissory note and mortgage authorize Franklin to recoup advances, attorney fees, and court costs.[77] These fees and costs then became a part of the total judgment amount, which with accrued interest from April 2014 easily surpassed Franklin's winning credit bid of $528,200.

Accordingly, the bankruptcy court did not err by dismissing the claim for violation of the discharge injunction.

### c. The bankruptcy court did not err by dismissing the claim for breach of settlement agreement.

The complaint alleges that RCB Bank breached its promise under the settlement agreement to convey its interest in the home to Mr. Bednar in two ways. First, the complaint alleges that RCB Bank had nothing to convey because the foreclosure sale to RCB Bank, based on a winning bid of less than two thirds of the home's appraised value—contrary to the requirements of Oklahoma law, was invalid. Second, the complaint alleges the quitclaim deed purporting to convey title to the home to Mr. Bednar had multiple defects.

---

[75]  *June 11, 2018 Journal Entry of Judgment* at 5, *in* Appellant's App. at 282.
[76]  *Id.* at 6, *in* Appellant's App. at 283.
[77]  *See Sisney v. Smalley*, 690 P.2d 1048, 1049 (Okla. 1984) (citing *Garner v. City of Tulsa*, 651 P.2d 1325 (Okla. 1982)) ("As a general rule, attorney fees to a prevailing party are not recoverable in the absence of a statute or an enforceable contract."); Okla. Stat. tit. 42, § 176 (1910).

The State Court entered a final order confirming the Sheriff's sale to RCB Bank pursuant to the foreclosure judgment entered in its favor. Mr. Bednar did not appeal the judgment or order. Under *Rooker-Feldman*, he cannot now challenge the validity of the Sheriff's sale in bankruptcy court based on the amount of RCB Bank's bid.

Any defect in the quitclaim deed did not injure Mr. Bednar. The quitclaim deed, even if it had been validly executed and delivered, would not have conveyed anything to Mr. Bednar. While RCB Bank asserts it performed all acts required under the settlement agreement, Franklin's foreclosure on the home after the settlement was reached terminated any interest RCB Bank held in the home.[78] RCB Bank no longer held title to or any other interest in the property and could not convey title to Mr. Bednar. Review of RCB Bank's interest in the home, other than concluding Franklin's foreclosure extinguished RCB Bank's interest in the home, would require contradicting the State Court's judgment. Such review is precluded by the *Rooker-Feldman* doctrine. Because Mr. Bednar suffered no injury even if the quitclaim deed had not been defective, the complaint failed to state a claim for breach of the settlement agreement upon which relief could be granted. The bankruptcy court did not err by dismissing the claim.[79]

---

[78]    *June 11, 2018 Journal Entry of Judgment* at 7, *in* Appellant's App. at 284 (ordering all defendants, including RCB Bank were "barred, foreclosed and enjoined from asserting or claiming any right, title, interest . . . to said real estate and premises.").
[79]    If Mr. Bednar is arguing that RCB Bank violated the discharge injunction by failing to deliver to him a valid quitclaim deed to the home, the argument fails for the same reason.

### d. The bankruptcy court did not err by dismissing the claims for civil conspiracy.

Finally, the complaint asserts claims for civil conspiracy. The complaint alleges the Sheriff conspired with Franklin to orchestrate an unlawful foreclosure in violation of the discharge injunction by (a) allowing Franklin to credit bid at the foreclosure sale based on an invalid foreclosure judgment, and (b) allowing Franklin to credit bid more than the amount of its judgment. The complaint alleges further that RCB Bank and Franklin, by conducting the two foreclosure sales based on invalid state court judgments entered in violation of the discharge injunction, conspired to frustrate the settlement between RCB Bank and Mr. Bednar.

The bankruptcy court correctly recognized that civil conspiracy requires "a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means."[80] As such "[t]here can be no civil conspiracy where the *act* complained of and the *means employed* are lawful."[81] The State Court ordered the Sheriff to sell the home[82] and confirmed the Sheriff's sale to Franklin.[83] The *Rooker-Feldman* doctrine prevented the bankruptcy court from revisiting the order confirming the Sheriff's sale. Franklin's foreclosure was not a violation of the discharge injunction. The Sheriff's actions taken as a result of the foreclosure judgment also did not violate the discharge

---

[80] *Brock v. Thompson*, 948 P.2d 279, 294 (Okla. 1997) (citing *Jurkowski v. Crawley*, 637 P.2d 56, 62 (Okla. 1981)).
[81] *Id.* (citing *N.A.A.C.P. v. Claiborne Hardware Co.*, 458 U.S. 886, 928 (1982)).
[82] *June 11, 2018 Journal Entry of Judgment* at 6, *in* Appellant's App. at 283.
[83] *Order Confirming Sale*, *in* Appellant's App. at 120.

injunction.[84] Therefore, the bankruptcy court did not err in dismissing the civil conspiracy claim alleged against the Sherriff for failure to state a claim.

To the extent Mr. Bednar alleged that RCB Bank and Franklin conspired to frustrate the settlement between RCB Bank and Mr. Bednar by conducting the two foreclosure sales based on invalid state court judgments entered in violation of the discharge injunction, the argument also fails. *Rooker-Feldman* prevents us from reviewing whether the state court foreclosure judgments were entered in accordance with Oklahoma law. Mr. Bednar's recourse was to appeal those judgments.

### e. The bankruptcy court did not err by denying injunctive relief.

Mr. Bednar sought injunctive relief based on his allegation that the foreclosure sale to RCB Bank was invalid because the sale price was not at least two-thirds of the value of the home.[85] However, the State Court entered an order confirming the sale, which became preclusive upon Mr. Bednar's failure to appeal. Thus, any review of the foreclosure sale to RCB Bank would have required the bankruptcy court to "review and reject[]" the State Court's final order confirming the sale in violation of *Rooker-Feldman*.[86] Mr. Bednar argues motions challenging the Sheriff's sale "are being set;"

---

[84]  *Cf. Westman v. Andersohn (In re Westman)*, 300 B.R. 338, 344-45 (Bankr. D. Minn. 2003) (explaining where sheriff statutorily required to levy and sell property on behalf of judgment creditor, it was the creditor's duty to prevent violations of the § 362 automatic stay).

[85]  *Second Amended Complaint* at 3, *in* Appellant's App. at 354.

[86]  *Miller v. Deutsche Bank Nat'l Tr. Co. (In re Miller)*, 666 F.3d 1255, 1261 (10th Cir. 2012) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005)).

however, the State Court docket reveals no timely filed pending motion to reconsider that would render the sale confirmation order non-preclusive.

Mr. Bednar also sought an injunction to prevent Franklin and Fannie Mae from depriving him of possession of his home on the ground that Franklin and Fannie Mae forfeited their interests in his home by failing to assert their rights in RCB Bank's foreclosure proceeding. The Second Amended Complaint alleges Franklin and Fannie Mae's "rights were merged into [RCB Bank's foreclosure judgment] and as such, [ ] it did not have any further right or interest to litigate in rem regarding the property."[87] Coupled with this argument, Mr. Bednar also sought declaratory relief confirming "the second sheriff sale [to Franklin] was invalid and moot."[88] This is also the basis of the claim of conspiracy, which relates to what transpired in connection with the foreclosure sale to Franklin.

We have already concluded that *Rooker-Feldman* prevented Mr. Bednar from attacking the validity of Franklin's lien or the Sheriff's sale to Franklin. The bankruptcy court did not err by denying injunctive relief.

### V.     Conclusion

Mr. Bednar's arguments on appeal related to the foreclosure sales of his home are not subject to review by this Court under the *Rooker-Feldman* doctrine. The bankruptcy court did not err in dismissing the claims for violation of the discharge injunction, breach

---

[87]     *Second Amended Complaint* at 3, *in* Appellant's App. at 354.
[88]     *Id.*, *in* Appellant's App. at 354.

of the settlement agreement, and conspiracy, and denying injunctive relief, based on

*Rooker-Feldman*.

Accordingly, the judgment and order of the bankruptcy court are AFFIRMED.